IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>HECTOR GRIMALDI RIVERA LAUREANO<br><br>Debtor | CASE NO. 15-01352<br><br>CHAPTER 12 |
| FONDO DE INNOVACION PARA EL DESARROLLO AGRICOLA DE PUERTO RICO, INC.<br><br>Plaintiff<br><br>vs.<br><br>HECTOR GRIMALDI RIVERA LAUREANO,<br>GRANJA DON MANUEL TOLITO, INC.<br><br>Defendant | ADV. PROC. 22-00086 |

OPINION AND ORDER

This adversary proceeding is before the court upon the motion for entry of default judgment filed by the plaintiff, Fondo de Innovación para el Desarrollo Agrícola de Puerto Rico, Inc. ("FIDA" or "Plaintiff") (dkt. #15); the motion requesting setting aside entry of default filed by the Debtor/Defendant, Hector Grimaldi Rivera Laureano ("Debtor" or "Defendant") (dkt. #16); Fondo's motion to strike (dkt. #22); FIDA's reply (dkt. #26); and Defendant's sur-reply (dkt. #32).

Background

The Debtor filed a voluntary petition under Chapter 12 of the Bankruptcy Code on February 26, 2015. The Debtor in Schedule B- Personal Property included its 60% interest in Granja Don Manuel Tolito, Inc. which he valued at $8,430.00. The Debtor also disclosed that the

-1-

other stockholder was FIDA and that it had a loan with FIDA that served as collateral for the debt. Debtor listed the total debt in the amount of $120,000 and disclosed that he understands that the corporation would have a value of zero. The Debtor included in schedule D – Creditors Holding Secured Claims – The Departamento de Agricultura, informing that the debtor is a codebtor of (FIDA) Fondo de Innovación Para el Desarrollo Agrícola de Puerto Rico (Mortgage Loan); and Autoridad de Tierras de Puerto Rico, as an assignee. Moreover, Debtor disclosed that the amount of the claim was $210,000 and the unsecured portion was in the amount of $201,570. Notice of the petition filing, 341 meeting of creditors and bar date to file claims was given on March 4, 2015, amongst others, to: Departamento de Hacienda, Autoridad de Tierras, Banco de Desarrollo Económico, Departamento de Hacienda, and Lcdo. Rafael Lugo Guzmán (attorney for Banco de Desarrollo Económico).

On October 28, 2015, an order confirming the Chapter 12 plan dated September 29, 2015, was entered (dkt. #33). The confirmed plan included in paragraph 2.3 the secured creditors affected by the plan were the following: (a) "Banco de Desarrollo Económico de Puerto Rico" (hereinafter identified as "BDEPR") and (b) creditor "Fondo de Innovación para el Desarrollo Agrícola De Puerto Rico" (hereinafter identified as "FIDA")." Paragraph 2.3(b) of the Chapter 12 plan states that:

"Fondo de Innovación para el Desarrollo Agrícola De Puerto Rico" ("FIDA"): This creditor has a secured [interest] claim against the Debtor. The following personal properties serve as collateral in "FIDA's" personal loan: 60% interest in a corporation named as: "Granja don Manuel Tolito, Inc." The corporation was created in 2008. It was created by debtor. Debtor has 40% interest in the corporation and the other 60% interest belongs to creditor "FIDA". In 2012 the corporation ceased operations.

The corporation still [owns] the following assets that serves as collateral in creditor "FIDA's" personal loan: (a) 1. 1,120 rotten and unused [h]en cages @ $10.00 each = $11,200.00 or less; (b) 6 eggs collectors @ $300.00 each = $1,800.00, (c) 3 "torba" or poultry distribution electric carts with a trail @ $300.00 each = $900.00; and (d) 15 ceiling fans @ $10.00 each = $150.00. The Debtor's total assets value is $14,050.00. ($14,050.00 x 60% "FIDA" interest = $8,430.00.) This is the value of creditor "FIDA" collateral. Debtor listed this account as secured

interest claim. As of today, creditor FIDA [has] not filed any proof of claim as secured interest regarding instant personal loan. Debtor will surrender farming equipment that serves as collateral in the personal loan as soon this creditor could provide a proof of claim with evidence of perfection of lien. Otherwise[,] this creditor FIDA will be treated as an unsecured interest creditor.

On April 15, 2021, the Chapter 12 trustee filed a report of plan completion and certification of Discharge (dkt. #70). On April 16, 2021, the Chapter 12 trustee filed a final report (dkt. #71). On May 4, 2021, a Discharge of Debtor order was entered (dkt. #73). On May 20, 2021, the court entered an order discharging the Chapter 12 trustee and closing the case (dkt. #75).

On August 19, 2022, FIDA filed a motion to reopen the case to challenge the discharge as the Debtor failed to include FIDA as a secured creditor and FIDA was never notified about the bankruptcy petition filing (dkt. #78). The request to reopen was granted on September 14, 2022 (dkt. #80).

On November 22, 2022, FIDA filed the instant complaint challenging the dischargeability of its debt pursuant to 11 U. S. C. § 523(a)(3) due to lack of notification of the bankruptcy case filing. Summons were issued (dkt. # 3 and dkt. #4), and on December 22, 2022, FIDA filed a certificate of service of the summons on Granja Don Manuel Tolito, Inc. and Héctor G. Rivera Laureano (dkt. #9).

On January 30, 2023, FIDA filed its request for entry of default (dkt. #11) and default was entered on January 30, 2023 (dkt. #12). On February 3, 2023, Debtor's attorney, María Soledad Lozada Figueroa, Esq., filed a notice of appearance (dkt. #13).

FIDA filed a motion for default judgment on February 21, 2023 (dkt. #15) and on February 22, 2023, the Defendant filed his reply and opposition for default judgment (dkt. #16). The Defendant also filed an answer to the complaint on February 22, 2023 (dkt. #17). On March 13, 2023, FIDA moved the court to strike the answer to the complaint (dkt. #22). On March 16, 2023, FIDA filed a reply to Defendant's motion to set aside the default entered (dkt. #26). The Defendant file a sur-reply on April 3, 2023 (dkt. #32).

-3-

Position of the Parties

Debtor/Defendant

Defendant prays the court to set aside the default pursuant to Fed. R. Civ. P. 55(c), made applicable to adversary proceedings by Fed. R. Bankr. P. 7055, for "good cause." Defendant alleges that his default was not willful. The Debtor could not find an attorney to represent him and is not fluent in the English language. He did not know how to answer the complaint and was scared as to the amount of money involved, that is, around $500,000.00. Defendant also alleges that the Plaintiff is not prejudiced as the case is on an early stage. Furthermore, the Defendant claims to have a cognizable defense. The basis for Debtor's/Defendant's request is the following:

"They entered into a Sales Agreement of Shares with Granja Don Tolito Inc. [in] 2007. The Agreement states that FIDA is owner of 40% of the corporation and that it invested on it for certain materials, for improvements and for working capital. The UCC filed is for them to be able to collect monies from the Programa de [Infraestructura]. As per the preliminary investigation made within the last couple of days, FIDA recovered the amount directly from its own agency after they certified the improvements made, this was not submitted as part of the debt certification filed. Moreover, in 2012, the corporation Granja Don Tolito Inc. was cancelled in the Department of State, so from that moment it [ceased] to exist as a corporation. In any event of dissolution as per the Agreement, FIDA would receive 40% of what was left after the creditors were paid. In 2015, the debtor filed for bankruptcy and listed as a dba Granja Don Tolito Inc. as a disclosure for every creditor as per the [requirement] of the Bankruptcy Code but Granja Don Tolito Inc. did not file for bankruptcy and couldn't file for bankruptcy. Debtor did not receive monies from the Programa de [Infraestructura] when he was in bankruptcy, so he did not have to list FIDA as a creditor nor as a secured creditor. Moreover, FIDA asserts that he was not notified. Debtor asserts that FIDA is the same as the Autoridad de Tierras and the Department of Agriculture [which were] also notified both to the address of FIDA. They have an administrative problem that has not been caused by the debtor. They are trying to collect an alleged debt without a loan agreement nor a Certified Translation of the Agreement after 14 years to a corporation that was cancelled more than 12 years ago."

Defendant states he acted in good faith and prays for the court to allow him to present the case on the merits. On February 22, 2023, the Defendant filed an answer to the complaint. On

-4-

March 13, 2023, plaintiff filed a motion to strike the answer to the complaint as the same was filed after the default was entered.

FIDA

FIDA opposes Debtor/defendant's request to set aside default arguing that defendant has not shown good cause for failure to answer the complaint and was fully aware of the proceedings against him.  FIDA reasserts that it was not given notice of the bankruptcy proceedings and that the corresponding consequence is for its debt to be declared nondischargeable. FIDA negates that its request has a specific amount.

FIDA states that it is a separate legal entity from the Puerto Rico Land Authority ("Autoridad de Tierras") and the Department of Agriculture, from its creation on October 30, 2001. The corporate resolution of October 30, 2001, states that FIDA is a public government instrumentality, and a subsidiary corporation of the Puerto Rico Land Authority ("Autoridad de Tierras").

Standard for Granting Relief From Entry of Default

Rule 55(c) of the Fed. R. Civ. P. , made applicable to adversary proceedings by Rule 7055 of the Fed. R. Bankr. P. , states the "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  The language in Rule 55(c) differentiates between relief from the entry of default and relief from a final default judgment. The difference impacts the procedures and basis for setting aside each. Both share elements needed to support the request.  However, courts are more lenient to grant relief from an entry of default that from the entry of a default judgment.  10A Charles Alan Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2692 at 104 – 11 (4th ed. 2022).

Rule 55(c) provides for setting aside an entry of default for "good cause." Since there is no mechanical formula for determining good cause, courts must consider applicable relevant factors.

"The three typically considered are (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented." Indigo America, Inc. v. Big Impressions, LLC, 597 F.3d 1, 3 (1st Cir. 2010). But since there is no exclusive list, courts may also consider other relevant factors, such as: the nature of the defendant's explanation for the default; the good faith of the parties; the amount of money involved; and the timing of the motion to set aside the entry of default. Indigo America, Inc. v. Big Impressions, LLC, id. "Good cause" is a mutable standard that depends on the situation. Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989). The Rule 55(c) standard to vacate an entry of default is a liberal standard but not so elastic as to be devoid of substance. Murphy v. Kahana Villa Vacation Club, 2023 WL 3079178 (D. Mass. April 25, 2023).

A decision to set aside an entry of default lies within the discretion of the court. Leshore v. County of Worcester, 945 F.2d 471, 472 (1st Cir. 1991). The standard is liberal based upon the policy justification that actions should be resolved on their merits. Bryan v. Lark Hotels, LLC, 323 F.R.D. 116, 117 (D. Mass. 2017); citing Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1996).

Discussion

After due consideration of the arguments presented by both parties and the particular facts of the present situation, the court finds that the Defendant has established good cause for vacating the entry of default and proceeding to consider the matter on the merits.

Default was entered on January 30, 2023. Plaintiff requested the entry of default judgment on February 21, 2023. On February 22, 2023, the Defendant filed a reply to Plaintiff's request for default judgment and requested that the entry of default be set aside. On the same date the Defendant filed his answer to the complaint. Therefore, Defendant's action to set aside the entry of default was promptly taken.

The explanation given by the Defendant as to his failure to timely answer the complaint, namely, inability to obtain counsel and lack of fluency in the English language, are liberally construed as reasons leading the court to conclude that his actions were not willful. Moreso, considering what he believes are the amounts in controversy, that is, $500,000.00.

Considering the time that has elapsed since the filing of the Chapter 12 petition, the date of plan confirmation, and the date of entry of the discharge order, there is no undue delay to constitute unreasonable prejudice to the Plaintiff.

In addition, the Debtor/Defendant has presented a defense regarding that the parties that were notified of the filing of the Chapter 12 petition that may constitute a "cognizable defense." The First Circuit has held that "[e]stablishing the existence of a meritorious defense is not a particularly arduous task. '[A] party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.' Coon, 867 F.2d at 77." Indigo America, Inc. v. Big Impressions, LLA, 597 F.3d at 4.

Conclusion

In view of the foregoing, Defendant's request to set aside the entry of default is granted for good cause under Rule 55(c) has been shown.

A separate order will be entered scheduling a pretrial conference.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of September 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge